<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARMEN TORRES<br><br>      Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Civil Action No. 15-cv-0488 (SDW)<br><br><br>**OPINON**<br><br><br>January 14, 2016 |

**WIGENTON,** District Judge.

   This matter comes before this Court on Plaintiff Carmen Torres's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security (the "Commissioner"), with respect to Administrative Law Judge Donna A. Krappa's ("ALJ Krappa") denial of Plaintiff's claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Currently before this Court is the Commissioner's Motion to Remand and Plaintiff's Cross Motion seeking reversal of the Commissioner's decision and remand for the award of DIB. This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, the Commissioner's Motion to Remand is **DENIED**; Plaintiff's Cross Motion is **GRANTED**; and the Commissioner's decision is **REVERSED**, and this matter is **REMANDED** for the purpose of awarding Disability Insurance Benefits to Plaintiff.

1

I.    **PROCEDURAL HISTORY**

Plaintiff appeals from ALJ Krappa's January 29, 2014 denial of Plaintiff's fourth application for DIB which Plaintiff filed on February 18, 2006. Although the Commissioner's four previous denials of Plaintiff's requests for DIB are not currently before this Court, they are relevant insofar as the Commissioner seeks remand of Plaintiff's claim for further proceedings in what has already been more than a twenty-year process of seeking DIB for Plaintiff.

Plaintiff filed her initial claim for DIB on March 27, 1995 (Tr. 438-41.) That application was denied by ALJ Richard L. DeSteno on February 15, 1997, and was eventually appealed to the District Court. *See Torres v. Comm. Soc. Sec.*, No. 2:98-cv-02611-MTB.[1] On April 22, 1999, the District Court granted a consent order submitted by the parties reversing ALJ DeSteno's decision and remanding Plaintiff's claim for further proceedings.

After Plaintiff's claim was remanded, Plaintiff filed a second application for DIB on June 4, 1998, which was consolidated with her first application. ALJ John M. Farley subsequently denied Plaintiff's consolidated application on October 22, 1999 (Tr. 572), and Plaintiff sought review by the Appeals Council. However, the Appeals Council never rendered a decision as to Plaintiff's appeal of ALJ Farley's decision. (Tr. 572.) Furthermore, the Commission never took any action on Plaintiff's third application for benefits, which she filed on December 5, 2000. (Tr. 572.)

Plaintiff filed her fourth application for benefits on February 21, 2006. (Tr. 85-87.) Although Plaintiff's concurrent claim for Supplemental Security Income Benefits ("SSIB") was granted, her claim for DIB was once again denied at the initial and reconsideration levels, this

---

[1] The administrative record filed with this Court contains nearly 800 pages of records but does not contain the first two ALJ denials of Plaintiff's DIB claim. (*See* Dkt. No. 8.) This Court's references to those decisions are based on information contained in the parties' submissions as well as other parts of the administrative record.

time because the Commissioner found Plaintiff was not disabled before her insured status expired on March 31, 2000. (Tr. 572.) ALJ Farley then issued another decision denying Plaintiff's claim for DIB on April 9, 2008, this time based on ALJ Farley's finding that Plaintiff was capable of performing her past work as a maintenance worker through her date last insured ("DLI"). (Tr. 579.) After Plaintiff sought, and was denied, review of ALJ Farley's 2008 decision, she once again sought review of an ALJ decision before this Court. On February 23, 2010, the District Court once again granted a consent order reversing and remanding the Commissioner's denial of Plaintiff's DIB claim for further review. (Tr. 558-559.)

On September 16, 2010, the Appeals Council remanded Plaintiff's DIB claim with instructions for the ALJ to "[a]ttempt to locate the missing report of consultative examiner Dr. Perdomo." (Tr. 563-564.). On May 27, 2011, ALJ Joel H. Friedman issued a decision denying Plaintiff's claim for DIB, this time because "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." (Tr. 594.) However, on September 28, 2012, the Appeals Council remanded ALJ Friedman's denial of Plaintiff's DIB claim based on a number of errors in the decision. (Tr. 603-605.)

Subsequent to the Appeals Council's remand, ALJ Krappa held a hearing on Plaintiff's DIB claim on March 21, 2013, after which ALJ Krappa submitted questions via interrogatory to vocational expert Patricia Sasona ("VE Sasona") on August 1, 2013. (Tr. 752-761.) Although ALJ Krappa offered a supplemental hearing to Plaintiff via a letter dated August 13, 2013 (Tr. 776), and Plaintiff requested a supplemental hearing via letter on August 16, 2013 (Tr. 733), no supplemental hearing was held and ALJ Krappa issued a decision denying Plaintiff's claim for DIB for a fifth time on January 29, 2014. (Tr. 457-467.) This time the ALJ denied Plaintiff's claim because "[t]hrough the date last insured, [Plaintiff] was capable of performing past

3

relevant work as a cleaner/housekeeper" and, therefore, Plaintiff was not disabled within the meaning of the Act through her DLI of March 31, 2000. (Tr. 467.)

On January 23, 2015, Plaintiff filed the appeal of the Commissioner's decision currently before this Court (Dkt. No. 1) and, once again, the Commissioner has requested that this Court reverse and remand the Commissioner's denial of Plaintiff's DIB claim for further proceedings. *See generally* Comm.'s Br. Supp. Mot. Remand ("Comm.'s Br. Supp."). Plaintiff has not consented to the Commissioner's request. Rather, Plaintiff submitted an Opposition and Cross Motion seeking reversal of the Commissioner's decision and remand for the award of DIB. *See generally* Pl.'s Cross Mot.

## II.   FACTUAL HISTORY

### A.  Personal and Employment History

Plaintiff, who was 45 years old at the time she filed her first application for DIB, was 64 years old at the time of ALJ Krappa's decision in 2014. (Tr. 438.) Plaintiff has a sixth grade education and is unable to speak English. (Tr. 460); Pl.'s Cross Mot. 6. Plaintiff was previously employed as a production machine tender and also worked for three days in 1994 as a housekeeper at the Hampton Hotel in Newark, New Jersey. (Tr. 420, 740.) It is important to note that the Social Security Administration's interviewing personnel found the housekeeper position to be an "unsuccessful work attempt." (Tr. 420.)

### B.  Medical History

Plaintiff's DIB claim alleges disability beginning on May 11, 1994, and includes symptoms of depression, hypertension, arthritis, and high cholesterol. (Tr. 460.) In ALJ Krappa's decision, she found that "[t]hrough the date last insured, [Plaintiff] had the following severe impairments: depression; hypertension; and arthritis" as per 20 CFR 404.1520(c).

4

The Plaintiff has been seen by numerous physicians since the onset of her symptoms over twenty years ago. Some of the earliest records are from Elizabeth General Medical Center where on April 13, 1995, Plaintiff "complain[ed] of depression, anxiety, insomnia and deterioration in functioning." (Tr. 310.) On that date, Plaintiff stated when she leaves "her home she feels something bad is going to happen. She feels someone is going to kill her." (Tr. 310.) In addition, Plaintiff "admit[ted] to thinking about jumping out of a three story window in her home or overdosing on her medications." (Tr. 310.) The diagnosis that day was a generalized anxiety disorder. (Tr. 310.) The record reflects that over the next year Plaintiff regularly sought treatment at Elizabeth General Medical Center and that her symptoms ranged from mildly depressed and anxious (Tr. 312) to depressed, psychotic, and paranoid. (Tr. 325.)

Plaintiff was also treated at Trinitas Hospital, although the record mostly reflects examinations beginning in 2001. On December 26, 2001, the record states that Plaintiff's affect was mildly depressed and that her speech was coherent. (Tr. 160.) On July 2, 2003, the record states that "Patient is still depressed, but . . . is able to function." (Tr. 154.) In addition, on February 15, 2006, the record states that Plaintiff was mildly depressed and suffers from anxiety and psychosis. (Tr. 150.)

Notes from treating psychiatrist Jesus Pena, M.D., on March 24, 2006, state that Plaintiff has symptoms of anxiety and depression. (Tr. 205.) According to Dr. Pena, Plaintiff was mildly depressed; clean; had "some difficulty" repeating letters backwards; needed frequent refocusing; and slow, simplified language. (Tr. 206.) In addition, Dr. Pena noted that Plaintiff was "slow to understand . . . borderline memory" had "mild attention and concentration problem [sic]" and had "difficulties to adjust to any change." (Tr. 208.)

On April 21, 2006, Dr. R.C. Patel examined Plaintiff for the New Jersey Department of Labor and diagnosed Plaintiff with hypertension, arthritis in her left shoulder and left knee, palpitations, anxiety, and depression. (Tr. 229-231.)

Finally, at the request of the Commissioner, Ernesto Perdomo, Ph.D., examined Plaintiff on August 8, 1998. (Tr. 779-782.) In sum, Dr. Perdomo noted the following:

> She does not take proper care of her hygiene. She will spend three or four days without taking a bath or without change clothes [sic] because she doesn't feel like it. She socializes very little, mostly at her sister's house. She does not take public transportation because she is afraid of getting lost . . . . She was oriented to person and place, but was unable to give today's date. She didn't know what month it was, but she was able to say that it was 1998. . . . Her mood and affect were depressed . . . . She was unable to repeat even three digits forwards . . . Long-term memory was somewhat impaired . . . . Concentration was also impaired. She was able to follow the interview, but some of the questions had to be repeated. She appeared to get lost during the interview and her mind went blank. . . . Intelligence appeared to be borderline.

(Tr. 780-781.)

Dr. Perdomo then noted "[Plaintiff was] a severely neurotic individual with severe depression and anxiety. . . . Her condition appears to be chronic and will certainly last more than one year. Her condition significantly impairs her ability to function independently in the occupational, social, as well as travel spheres."

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting

7

evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other

8

symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step

three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

ALJ Krappa applied the Five-Step Disability Test to the facts comprising Plaintiff's application for benefits and determined that Plaintiff was not disabled under the relevant portions of the Act. (*See* Tr. 457–467.) Specifically, ALJ Krappa determined that Plaintiff "was capable of performing past relevant work as a cleaner/housekeeper" through her DLI under 20 CFR 404.1565 and that, therefore, Plaintiff "was not under a disability, as defined by the Social Security Act" through her DLI under 20 CFR 404.1520(f). (Tr. 467.) However, the Commissioner now asks that this Court remand Plaintiff's claim "based on the error identified in Plaintiff's brief . . . . for an ALJ to determine whether at step four, any of Plaintiff's jobs qualify as past relevant work, including her job as a housekeeper/cleaner, and whether she can perform any of her past relevant work." Comm's Br. Supp. 2. The Commissioner makes this request despite the fact that Plaintiff has been seeking DIB for over twenty years, nearly ten of which have gone by since Plaintiff filed her fourth DIB application; the Commissioner has rendered *five*

11

decisions denying Plaintiff DIB; and the District Court previously granted two voluntary remands. In response, Plaintiff argues that this Court should reverse the Commissioner's decision and remand Plainiff's claim but solely for the purpose of awarding DIB. Thus, the issue before this Court is whether remand should be for further proceedings or for an award of DIB. As it would contravene justice to subject Plaintiff to yet another round of ALJ review, this Court remands this matter solely for the purpose of calculating and awarding Plaintiff DIB.

In her January 29, 2014 decision, in summary, ALJ Krappa made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2000.

2. The claimant did not engage in substantial gainful activity ("SGA") during the period from her alleged onset date of May 11, 1994, through her date last insured of March 31, 2000.

3. Through the date last insured, the claimant had the following severe impairments: depression; hypertension; and arthritis.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. During the period under consideration, I find that the claimant was capable of the *exertional demands* of medium work as defined under the Regulations; specifically, she was able to: lift/carry 50 lbs. occasionally and 25 lbs. frequently; stand/walk for 6 hours in an eight hour work day [sic]; sit for 6 hours in an eight hour work day [sic]; perform only occasional reaching with either arm; and otherwise perform unlimited pushing and pulling within the

weight restrictions given. Moreover, regarding the *postural and environmental demands* of work, I find that the claimant is able to perform jobs: that require no use of ladders, ropes, or scaffolds; that require only occasional use of ramps or stairs; that require frequent balancing, and stooping, but only occasional kneeling, crouching, and/or crawling; and that require no exposure to unprotected heights, hazards or dangerous machinery. Furthermore, as to *mental demands* of work, I find that the claimant is able to perform jobs: that are simple and repetitive; that are low stress (that is, these jobs require only an occasional change in the work setting during the workday, only an occasional change in decision making required during the workday, and, if production based, production is monitored at the end of the day rather than consistently throughout it); and that require only occasional contact with supervisors, co-workers, and/or the general public.

6. Through the date last insured, the claimant was capable of performing past relevant work as a cleaner/housekeeper. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 11, 1994, the alleged onset date, through March 31, 2000, the date last insured.

(Tr. 460-467.)

ALJ Krappa's sixth holding, which applies step four of the Five-Step Disability Test, is the focus of both the Commissioner's Motion to Remand and Plaintiff's Cross Motion. At this

step, ALJ Krappa adopted part of VE Sasona's opinion: that an individual with the limitations in holding five could perform work as a cleaner/housekeeper. (Tr. 467, 765.) However, ALJ Krappa erred in reaching this conclusion because Plaintiff's past work as a cleaner/housekeeper only lasted for three days and was determined by the Social Security Administration to be an unsuccessful work attempt. (Tr. 420.) Although the Commissioner has asked this Court to remand Plaintiff's claim to fix ALJ's error at step four, doing so is unnecessary. Plaintiff's only other relevant past work was as a production machine tender and VE Sasona found that a person with Plaintiff's limitations could not perform that work. (Tr. 765.) As ALJ Krappa "fully credit[ed VE Sasona's] expert opinion" it is clear that Plaintiff could not perform her only relevant past work, as a production machine tender, through her DLI. (Tr. 467.) Since Plaintiff could not have performed her relevant past work through her DLI, the ALJ's analysis should have proceeded on to step five of the Disability Test. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

The Commissioner now requests a remand to correct ALJ Krappa's error at step four and to perform the appropriate analysis at step five. Comm.'s Br. Supp. 2. However, considering the inordinate number of years Plaintiff has been seeking DIB, the number of times Plaintiff's application has been before an ALJ, and the number of times that the Commissioner has asked this Court to remand Plaintiff's claim, remanding Plaintiff's claim for further proceedings would contravene justice.

"A district court, after reviewing the decision of the Secretary may, under 42 U.S.C. 405(g) affirm, modify, or reverse the Secretary's decision with or without a remand to the Secretary for rehearing." *Podedworny*, 745 F.2d at 221. Furthermore, a district court may remand for the award of benefits where "the case has been fully developed and when substantial

evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000) (quoting *Podedworny*, 745 F.2d at 222).

In this instance, the record has been fully developed. Plaintiff's fourth application alone has been through three ALJ decisions (Tr. 457, 579, 594) and a district court remand (Tr. 558) over nearly ten years of proceedings. This sort of unjust delay is the type of egregious process the Third Circuit has repeatedly found justifies a remand for the award of benefits. *See, e.g.*, *Podedworny*, 745 F.2d at 213 (remanding for award of benefits where "appellant's application for benefits [was] pending for five and one-half years."); *Morales*, 225 F.3d at 320 (remanding for benefits where "[t]he disability determination ha[d] already taken ten years and the record [was] unlikely to change").

As there is nothing left to determine at step four of the Disability Test, the only step left to complete on remand would normally be step five. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). However, unlike the first four steps, the burden of production shifts to the Commissioner at step five, who must show "that other work exists in significant numbers in the national economy that [the Plaintiff] can do, given [the Plaintiff's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). The record before this Court contains substantial evidence that Plaintiff is disabled, and the Commissioner did not meet her step five burden based on that fully developed record. The Commissioner had adequate opportunity at each round of ALJ review to show that Plaintiff was not disabled, and yet, ALJ Krappa did not seek further testimony by psychiatric experts, did not ask VE Sasona for a determination as to step five when VE Sasona's initial interrogatory response regarding step five was "N/A" (Tr.764-773), did not hold the supplemental hearing offered to Plaintiff and that Plaintiff requested (Tr. 733,776), and did not address step five in her January 29, 2014 decision (Tr. 457-467.) Thus, while Plaintiff

has met her burden under the Disability Test, at step five, the Commissioner has not, entitling Plaintiff to an award of DIB. *See, e.g.*, *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993) ("In light of the Secretary's patent failure to satisfy the burden of proof at step five, and the long delay that has already occurred as a result of the Secretary's erroneous disposition of the proceedings, we exercise our discretionary authority to remand for an immediate award of benefits."). Because the evidence in the administrative record shows that Plaintiff is disabled and entitled to DIB, this Court reverses the decision of the Commissioner, and remands this matter for the award of Disability Insurance Benefits.

### IV. CONCLUSION

For the reasons stated above, the Commissioner's Motion to Remand is **DENIED**; Plaintiff's Cross Motion is **GRANTED**; and the Commissioner's decision is **REVERSED** and **REMANDED** for the calculation and award of DIB.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties